**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION – BAY CITY**

IN THE MATTER OF:

**INSPIRED CONCEPTS, LLC,**                     **Case No. 20-20034**

                                                **Chapter 11**

              **Debtor.**                       **Hon. Daniel Opperman**

**INSPIRED CONCEPTS, LLC,**

              **Plaintiff,**

**v.**                                          **Adv. Proc. No. 20-**

**GORDON FOOD SERVICE, INC.,**
**a Michigan corporation,**

              **Defendant.**

**VERIFIED COMPLAINT**
**FOR DECLARATORY \AND INJUNCTIVE RELIEF AND DAMAGES**

        Inspired Concepts, LLC, the Debtor, by and through its undersigned counsel, states for its

Verified Complaint as follows:

**I.   JURISDICTION AND VENUE**

        1.      The Debtor, Inspired Concepts, LLC, a Michigan limited liability company,

initiated these chapter 11 proceedings on January 10, 2020 ("Petition Date").

        2.      The Debtor is operating its business and managing its property and affairs as

debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

        3.      The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334.

        4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

        5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

6.     Defendant Gordon Food Service, Inc. is a Michigan corporation, with headquarters and principal place of business address of 1300 Gezon Parkway, S.W., Wyoming, Michigan 49509.  The Resident Agent of Defendant is the CSC – Lawyers Incorporating Service Co., with address of 601 Abbot Rd., East Lansing, Michigan 48823.

## II.     THE DEBTOR AND GORDON FOODS

7.     The Debtor is the owner and operator of eleven (11) family, quick service and fast-casual restaurants located in central and southeast Michigan.

8.     The Debtor employs over 250 hourly employees and 28 full-time salaried employees.

9.     Prior to the Petition Date, and in the ordinary course of business, the Debtor contracted with Gordon Food Service, Inc. ("GFS") for the delivery of food products and related restaurant supplies for seven (7) of its currently operating eleven (11) restaurant locations.   By the nature of the business, deliveries of food products occurred on average of 4 to 5 times per week throughout the Debtor's restaurant system to ensure fresh and high-quality food service to Debtor's customers.

10.     Any undue delay or failure to receive shipments of food products from GFS to the Debtor's restaurant locations would result in the inability of the Debtor to service its customers, the closing of the effected restaurant location, loss of good will and confidence with the public, and the loss of critical revenue necessary to operate the Debtor.

11.     Prior to the Petition Date, the Debtor was indebted to GFS in the approximate amount of $1.0 million ("Pre-Petition Indebtedness"), which debt was primarily the result of the closing of several Ponderosa branded restaurants during the 18 months preceding the Petition Date.  As of the Petition Date, the Debtor's credit terms with GFS required the Debtor to pay for

all shipments of food products and related goods on a weekly basis, plus the additional payment of 5 - 7% of each invoice toward application against the Pre-Petition Indebtedness. For purposes of clarity, every Friday the Debtor paid GFS for all deliveries received from GFS during the immediately preceding Friday – Thursday. Accordingly, no invoice for shipments by GFS was ever more than seven (7) days outstanding.

12. Upon entering bankruptcy on January 10, 2020, GFS immediately advised the Debtor of its intent to terminate the weekly payment terms and require the Debtor to either (i) pay COD for all future shipments, or (ii) pay a deposit to secure payment of post-petition deliveries of food products.

13. The Debtor advised GFS of the undue hardship that would result from the COD payment terms, and that it was unable to provide a substantive deposit to GFS based on the financial position of the Debtor, at which time general discussions were had between the Debtor and GFS for the possibility of providing it with critical vendor status, or in the alternative, for assumption of the Debtor's pre-petition contracts and cure of the Pre-Petition Indebtedness with GFS.

14. On or about February 10, 2020, discussions broke down with GFS related to terms to provide GFS with critical vendor status; thereafter, on February 13, 2020, GFS advised the Debtor that commencing the week of February 15, 2020, all future deliveries would require COD/EFT payments upon delivery.

15. Notwithstanding the Debtor's compliance with the COD payment terms, on February 21, 2020, GFS advised the Debtor that, commencing February 27, 2020, it would require the Debtor to pay cash in advance ("Advance Payment") for all deliveries received on or after that date.

16.     During this time, the Debtor and GFS renewed discussions with respect to a long-term resolution of the Debtor's relationship with GFS, including the possible assumption of the pre-petition distribution agreement.

17.     The Advance Payment procedures dictated by GFS presented a logistical quagmire for both the Debtor and GFS.  Notwithstanding any cash flow hardships to the Debtor, the Advance Payment procedure was unworkable as GFS was not able to issue an invoice to the Debtor, or otherwise provide the Debtor with the actual cost of the food products to be delivered, in advance of delivery of the goods.  In other words, under the Advance Payment procedure, GFS would require the Debtor to "guess" at how much product it ordered, pay the estimated amount, and then calculate the actual total after delivery.  This process was confusing, inefficient, and presented the Debtor with the likely scenario of paying for goods that were not delivered.

18.     Accordingly, on March 3, 2020, the Debtor and GFS entered into a letter agreement signed by Sharon Murphy, as Director of Credit for GFS ("Letter Agreement"), whereby the Debtor agreed to provide a $24,000 deposit to GFS ("Deposit") as security for all post-petition deliveries to the Debtor on or after March 3, 2020. (**See Letter Agreement, Exhibit A)**

19.     In addition, the Letter Agreement provided that payment terms for all deliveries on or after March 3, 2020 would be on COD/EFT terms, and not Advance Payment terms.

20.     The Letter Agreement was signed and delivered by GFS on March 3, 2020, and on March 4, 2020, the Debtor counter-signed and delivered the Letter Agreement to GFS.

21.     The Letter Agreement does not provide any conditions to its effectiveness other than the payment of the Deposit, which the Debtor promptly provided, nor does it provide a termination date to its effectiveness.

22.     In furtherance of prior discussions between the Debtor and GFS not related to the Letter Agreement, and in furtherance of prior discussion held February 26, 2020, the Debtor agreed on March 6, 2020, to provide a proposal to GFS concerning the parameters for a potential assumption and cure of the Pre-Petition Indebtedness by close of business March 10, 2020.

23.      However, by email dated March 9, 2020, GFS advised the Debtor that unless it delivers to GFS a proposal that GFS believes, in its sole discretion, is made in good faith, worth discussing, and provides for the payment of the Pre-Petition Indebtedness in full, as well as contains no conditions for additional approval by third parties, GFS will cease all future deliveries of goods to the Debtor after March 10, 2020.  **(See March 9, 2020 email, Exhibit B)**

24.     The Debtor is not able, in good faith, to meet the conditions unilaterally imposed by GFS with respect to the assumption and cure proposal, which would require payment of one million ($1,000,000) as an administrative expense claim.

25.     Due to GFS's threat, Debtor has a credible belief that GFS will violate the terms of the Letter Agreement and other contract documents and terminate service to the Debtor immediately.

## COUNT I

### BREACH OF LETTER AGREEMENT/ SPECIFIC PERFORMANCE

26.     The Debtor incorporates by reference paragraphs 1 – 25 as if fully set forth herein.

27.     The Letter Agreement constitutes an ordinary course, binding and enforceable agreement between the Debtor and GFS governing the terms for post-petition deliveries of goods to the Debtor.

28.     The Letter Agreement is unambiguous, and clearly sets forth the rights and obligations of each of the Debtor and GFS.

29.     The Debtor has, in good faith, relied on the representations and obligations of GFS under the Letter Agreement, and has commenced substantial performance under the Letter Agreement by paying the required Deposit.

30.     GFS has accepted the required Deposit.

31.     The Debtor has complied with all terms and provisions of the Letter Agreement, is current on all post-petition amounts owed to GFS, and is otherwise not in default with respect to any other post-petition obligations to GFS; however, GFS has advised the Debtor that it will no longer perform its obligations under the Letter Agreement.

32.     Accordingly, GFS has committed a material anticipatory breach of the Letter Agreement.

33.     Any undue delay or failure to receive shipments of food products from GFS to the Debtor's restaurant locations will result in the inability of the Debtor to service its customers, the closing of the effected restaurant location, the loss of good will and confidence with the public, and the loss of critical revenue necessary to operate the Debtor.

34.     In short, as a direct and proximate result of GFS's material breach, the Debtor will be irreparably harmed.

WHEREFORE, the Debtor respectfully requests this Court enter judgment in its favor and against Defendant Gordon Food Service as follows:

A. Order GFS to specifically perform its obligations under the express terms of the Letter Agreement;

B. Award the Debtor incidental, compensatory, and consequential damages; and

C. Award the Debtor its costs, expenses, actual attorney fees and such other relief the Court may deem equitable and just under the circumstances.

## COUNT II

## VIOLATION OF AUTOMATIC STAY

35. The Debtor incorporates by reference paragraphs 1 – 34 as though fully set forth herein.

36. Section 362(a) of the Bankruptcy Code provides in pertinent part that "a petition filed under…this title…operates as a stay, applicable to all entities, of – (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title".

37. The Debtor is current on all post-petition obligations to GFS, including all obligations under the Letter Agreement.

38. GFS's basis for the termination of all further deliveries to the Debtor is not, therefore, based on the failure of the Debtor to pay for post-petition shipments; rather the perceived delay in securing an agreement with the Debtor for the assumption and cure of the Pre-Petition Indebtedness.

39. GFS's threat to cease post-petition shipments of necessary food products and related goods to the Debtor unless the Debtor deliver to it a proposal, that in its sole discretion, adequately provides for the assumption and cure of the entirety of the Pre-Petition Indebtedness,

is a clear an unequivocal attempt to collect a pre-petition obligation in violation of the automatic stay provisions of 11 U.S.C. § 362.

40.     Further, GFS is obligated to make deliveries to Debtor under certain contracts directly with Debtor and with Debtor's franchisors to which Debtor has rights as a third-party beneficiary. By threatening to cease deliveries to Debtor, GFS is effectively terminating Debtor's rights under these contracts, which is also a violation of the automatic stay.

WHEREFORE, the Debtor respectfully requests this Court enter judgment in its favor and against Defendant Gordon Food Service as follows:

    A. Order GFS to specifically perform its obligations under the express terms of the Letter Agreement;

    B. Award the Debtor incidental, compensatory, and consequential damages; and

    C. Award the Debtor its costs, expenses, actual attorney fees and such other relief the Court may deem equitable and just under the circumstances.

## COUNT III

## PRELIMINARY AND PERMANENT INJUNCTION

41.     The debtor incorporates paragraphs 1 – 40 as though fully set forth herein.

42.     The Debtor has no adequate remedy at law other than a preliminary and permanent injunction against GFS.

43.     The Debtor will be irreparably harmed unless GFS is preliminarily and permanently enjoined from further breaches of the Letter Agreement and underlying pre-petition supply agreements with the Debtor, or otherwise taking actions in violation of the automatic stay, and compelled to continue to provide post-petition deliveries of goods to the Debtor not conditioned on any agreement to assume and cure the Pre-Petition Indebtedness.

44.     The balance of the harm to the Debtor by not granting a preliminary and permanent injunction against the actions of GFS far outweighs any harm to GFS by compelling them to deliver post-petition goods in accordance with the terms of the Letter Agreement.

45.     Without the issuance of a preliminary and permanent injunction, there is a credible danger that GFS will continue to deny the shipment of food products and related goods to the Debtor.

46.     It is in the best interest of public policy to enjoin GFS from terminating its obligations to timely ship goods to the Debtor in accordance with contractual agreements and in violation of the automatic stay.

[space intentionally left blank]

WHEREFORE, the Debtor respectfully requests this Court preliminarily and permanently enjoin GFS from breaching its obligation to timely deliver goods to the Debtor and from further violations of the automatic stay, and compel GFS to continue to supply the Debtor with food products and related goods in accordance with the Letter Agreement and its pre-petition contractual obligations.

Respectfully submitted,

GRASL PLC

*/s/ Jeffrey S. Grasl*
Jeffrey S. Grasl (P62550)
Counsel for Debtor
31800 Northwestern Hwy., Suite 350
Farmington Hills, MI 48334
T: 248.385.2980
F: 248.666.1360
E: jeff@graslplc.com

Dated: March 10, 2020

## **VERIFICATION**

I declare, under penalty of perjury, that the allegations of the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

*/s/ Jeffrey Neely*
Jeffrey Neely, Chief Executive Officer

**EXHIBIT A: LETTER AGREEMENT**



Gordon Food Service
1300 Gezon Parkway, S.W.
Wyoming, MI 49509
(616) 530-7000
www.gfs.com

March 3, 2020

Inspired Concepts, LLC
Attn: Jeff Neely, CEO
555 S. Mission St.
Mt. Pleasant, MI 48858

Re:    Payment Terms

Dear Mr. Neely:

As you know, Gordon Food Service, Inc. ("GFS") recently reduced the payment terms of Inspired Concepts, LLC ("IC") to COD/EFT on delivery after IC filed for bankruptcy protection. In order to continue payment terms on COD/EFT, IC has agreed to pay GFS a deposit of $24,000.00 based on its average purchases over a weekly period (the "Deposit").

Upon indefeasible payment of the Deposit, GFS will provide IC with COD/EFT payment terms for all purchases made after March 3, 2020 by IC from GFS. The Deposit will be held on deposit by GFS as security for payment of all purchases made by IC from GFS after March 3, 2020. Any interest earned on the Deposit will be retained by GFS.

If IC fails to pay for any purchases from GFS by the due date, then GFS may apply all or part of the Deposit to such delinquent amount upon notice to IC. GFS may then, in its discretion, require IC to replenish the Deposit by such amount used to pay down the delinquent amount or return the deposit and reduce payment terms to pre-payment on all future purchases. Should IC increase its purchases so as to average more than $24,000.00 over a weekly period, then IC shall pay an additional amount toward the deposit commensurate with the average purchase amount above $24,000.00.

IC may request return of any remaining amount of the Deposit upon 30 days written notice to GFS at the above address. Prior to returning the Deposit, GFS may elect to reduce payment terms to wire/pre-payment and deduct any amounts due for product delivered after March 3, 2020 that remain unpaid.

If you agree with the terms set forth above, please sign and date the acknowledgement below and return a copy to me.

Thank you.

Inspired Concepts, LLC
Jeff Neely, CEO
Page 2

Sincerely,

_Sharon Murphy_                                          Date: _March 3, 2020_

Sharon Murphy
Director of Credit
Gordon Food Service, Inc.
Sharon.vet@gfs.com

jal

*Acknowledged and agreed:*

Inspired Concepts, LLC

Signed: _____                       Date: _MARCH 4, 2020_

Name: _____JEFFREY NEELY_____

Title: _____CEO_____

# EXHIBIT B: MARCH 9, 2020 EMAIL

---------- Forwarded message ---------
From: **Jason.Torf@icemiller.com** <Jason.Torf@icemiller.com>
Date: Mon, Mar 9, 2020 at 11:47 AM
Subject: Re: [EXT] Re: Inspired Concepts - Proposal to GFS
To: Jeffrey Grasl <graslplc@gmail.com>
Cc: John.Cannizzaro@icemiller.com <John.Cannizzaro@icemiller.com>, Jeffrey S. Grasl <jeff@graslplc.com>


Jeff,

We will agree to keep the debtor on its current EFT COD terms through Tuesday, March 10 at 5:00 p.m. ET<x-apple-data-detectors://4>.  If we do not receive a proposal that GFS, in its sole discretion, believes to be in good faith by that time, GFS will immediately discontinue service to the debtor until GFS receives a proposal that it believes is made in good faith and is worth discussing.  To be clear, we have already agreed in principle that the contract between the debtor and GFS will be assumed.  As we discussed with our clients present at the meeting after the hearing on February 26, the proposal to be made by the debtor is solely as to a payment schedule – both during the bankruptcy and post-emergence if the debtor confirms a plan – regarding the cure amount that will be owed upon assumption.  GFS will deem any proposal that deviates from this structure not to have been made in good faith.  GFS will also deem any proposal that is subject to further review and approval, including by third parties, not to have been made in good faith.

If the debtor presents to GFS a proposal that GFS believes, in its sole discretion, has been made in good faith by the deadline stated above, then GFS will continue to permit the debtor to purchase goods from GFS on EFT COD terms through Tuesday, March 17 at 5:00 p.m. ET<x-apple-data-detectors://6>, so long as GFS believes, in its sole discretion, that the debtor continues to negotiate with GFS in good faith toward a structure for assumption of the contract.  If the parties have not reached an agreement by Tuesday, March 17 at 5:00 p.m. ET<x-apple-data-detectors://7>, or if the debtor ceases to negotiate in good faith, in GFS' sole belief, sooner, then GFS will immediately discontinue service to the debtor until the parties reach agreement on terms for assumption of the contract.

If the parties reach agreement on terms for assumption of the contract by no later than Tuesday, March 17 at 5:00 p.m. ET<x-apple-data-detectors://8>, then GFS will continue to permit the debtor to purchase goods from GFS on EFT COD terms through Friday, March 20 at 5:00 p.m. ET<x-apple-data-detectors://9>, by which time GFS expects the debtor to file a motion seeking approval for the assumption of the parties' contract on the agreed terms.  The debtor must seek a hearing on the motion on an expedited basis and obtain a hearing from the court as soon as practicable, taking into account the court's schedule and availability.  If a motion seeking approval of the parties' agreement is not file by Friday, March 20 at 5:00 p.m. ET<x-apple-data-detectors://10> and a hearing date obtained on an expedited basis, then GFS will immediately discontinue service to the debtor until the motion is filed with an expedited hearing date set.

In the event that GFS discontinues service to the debtor as set forth above, GFS will refund the postpetition deposit that the debtor has placed with GFS, subject to offset of any postpetition amounts due to GFS.

GFS makes no commitment or agreement regarding ongoing terms or service to the debtor other than as expressly stated above.

Jason